**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KEITH ANDREWS, | No. 4:19-CV-02200 |
| Plaintiff, | (Judge Brann) |
| v. | |
| WILLIAMS WPC-I, LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**JULY 16, 2020**

## I.   BACKGROUND

On May 1, 2020, Plaintiff Keith Andrews filed a five-count amended complaint against Defendants Williams WPC-I, LLC, Williams WPC-II, Inc., Williams WPC-III, Inc, Williams WPC International Company; and Alan Armstrong.  Andrews' amended complaint brings claims under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA").

On May 13, 2020, Defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendants also move the Court to, in the alternative, strike certain portions of the amended complaint under Federal Rule of Civil Procedure 12(f), and/or to order

Andrews to file a more definite statement under Federal Rule of Civil Procedure Rule 12(e).

The Court grants Defendants' motion in part and denies it in part. However, Plaintiff will be provided leave to further amend the complaint.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions. These

---

[1]    *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

[2]    *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

[3]    *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

[4]    *Neitzke*, 490 U.S. at 327.

[5]    Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313, 316, 319-20 (2012).

[6]    550 U.S. 544 (2007).

[7]    556 U.S. 662, 678 (2009).

cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[8]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[11]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[12]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[13]  No matter the context, however, "[w]here a complaint pleads facts that are 'merely

---

[8]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[9]  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[10]  *Iqbal*, 556 U.S. at 678.

[11]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[12]  *Twombly*, 550 U.S. at 556.

[13]  *Iqbal*, 556 U.S. at 679.

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[14]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[15]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[16]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[18]

---

[14]  *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[15]  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[16]  *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[17]  *Iqbal*, 556 U.S. at 678.

[18]  *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).  A plaintiff in an employment discrimination case does not need to establish a *prima facie* case in his or her complaint.  *Connelly*, 809 F.3d at 788.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[19]  Typically, to consider materials outside the complaint, a motion to dismiss must be converted to a motion for summary judgment.[20]  However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[21]  It is permissible to consider full text of documents partially quoted in the complaint.[22]  It is also permissible to consider documents relied upon by the plaintiff in drafting the complaint and integral to the complaint.[23]  "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[24] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[25]  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[26]  In this matter, I find that these conditions have been met.  I will consequently consider Defendants' attachments.

---

[19]   *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[20]   *See id.* and Fed. R. Civ. P. 12(d).

[21]   *Faulkner,* 463 F.3d at 134.

[22]   *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996).

[23]   *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

[24]   *Faulkner*, 463 F.3d at 134.

[25]   *Id.  See also, e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

[26]   *Faulkner*, 463 F.3d at 134.

### B.     Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which I must accept as true for the purposes of this motion, are as follows.

In or around October 2012, Keith Andrews became employed by Access Midstream.[27]  Access Midstream was then acquired by Williams[28] in or around 2016.[29]  Andrews was employed by Williams as a Senior Operations Technician.[30]

When Williams acquired Access Midstream, current employees, including Andrews, retained their seniority level dating back to their original hire date with Access Midstream.[31]  Andrews, therefore, had seven years of seniority with Williams.[32]

In or around July 2019, Williams issued a voluntary separation agreement to all its employees who would be fifty-five years of age or older on December 31, 2019.[33]  Andrews, currently a sixty-two-year-old male, falls within the class of employees to whom Williams offered the voluntary separation agreement.[34]  The voluntary severance package component of the separation agreement offered the following:[35]

---

[27]   Doc. 17 at ¶ 22.
[28]   The amended complaint refers to "Williams" – or, more precisely, "WILLIAMS" – without specifying the corporate entity to which Andrews is referring.
[29]   Doc. 17 at ¶ 23.
[30]   Doc. 17 at ¶ 24.
[31]   Doc. 17 at ¶ 25.
[32]   Doc. 17 at ¶ 26.
[33]   Doc. 17 at ¶ 27.
[34]   Doc. 17 at ¶ 28.
[35]   Doc. 17 at ¶ 29.

- **Employees with over three years of service:** a cash separation agreement of 2.5 weeks at base pay for each year of service, capped at 65 weeks.  Payments were contingent on the employee signing and not revoking (that is, not cancelling) an individualized release agreement.

- **Employees with one to three years of service:** a cash separation agreement of 7.5 weeks at base pay.

- **Employees with less than one year of service:** a cash separation payment of 2.5 weeks at base pay.

The voluntary severance package went on to state that severances would be granted on a first come, first served basis, and that there was no guarantee that all employees who elected to take the severance package would be compensated.[36] The compensation in the voluntary severance package exceeded the severance that Williams would offer employees who did not elect to take the severance package and then were ultimately terminated due to an involuntary reduction in force.[37]

Similarly situated younger Williams employees did not feel pressure to leave their jobs pursuant to the voluntary severance agreement and were not similarly threatened with losing their jobs.[38]  Workers over fifty-five years of age were pressured by Williams to take the voluntary severance package or were consistently threatened with additional layoffs that would result in less severance

---

[36]   Doc. 17 at ¶ 30.
[37]   Doc. 17 at ¶ 31.
[38]   Doc. 17 at ¶ 32.

(if any) being offered.[39]  Andrews did not elect to take the voluntary severance package.[40]

### 1.    The July 16, 2019 Frequently Asked Questions Document

One question in a July 16, 2019 Frequently Asked Questions document, proffered by Williams, states: "What if I don't sign my separation agreement?"[41] The corresponding answer states: "Your election to participate in the [voluntary severance package] is not revocable and cannot be changed.  Your decision to sign the release agreement is a separate decision.  You will receive your agreement on or near the release date, and will have at least 45 days to consider and sign the agreement.  If you do not sign the release agreement or you revoke the execution of your agreement, you employment will still end and you [will] not receive the separation payment under the [voluntary severance package]."[42]

### 2.    The August 20, 2019 Conference

On or around August 20, 2019, Defendant Alan Armstrong, Williams' Chief Executive Officer,[43] held a conference where he stated that approximately 350 employees similarly situated to Andrews elected to take the voluntary severance

---

[39]  Doc. 17 at ¶ 33.
[40]  Doc. 17 at ¶ 44.

[41]  Doc. 17 at ¶ 34.
[42]  Doc. 17 at ¶ 35.
[43]  Doc. 17 at ¶ 12.  The amended complaint states that Armstrong "was and is an employee for Respondent BLACKROCK."  Doc. 17 at ¶ 11.  But who is Blackrock?  Blackrock is not listed as a defendant in this case.

package.[44]  Armstrong went on to state that Williams would be making additional reductions in the workforce despite the fact that approximately 800 employees had elected not to take the voluntary severance package.[45]  The Court infers that Andrews was present at this conference.[46]

### 3.   Andrews' September 17, 2019 Discrimination Charge – and Following Events

On or around September 17, 2019, Andrews filed a charge of discrimination with the Equal Employment Opportunity Commission.  This charge was also filed with the Pennsylvania Commission on Human Relations.  The charge was filed on behalf of Andrews and similarly situated employees.  It alleged age discrimination, retaliation, and hostile work environment.[47]

After filing his charge, Andrews received a poor performance review.  He also stopped received emails regarding his management duties and was not invited to management meetings.[48]  Also, Defendants asked Andrews about equipment repair.  When Andrews made recommendations on repairs, Defendants deliberately chose alternate repair mechanisms and then blamed Andrews when those

---

[44]  Doc. 17 at ¶ 36.
[45]  Doc. 17 at ¶ 37.
[46]  The amended complaint provides no insight as to who was in attendance.  *See* Doc. 17 at ¶¶ 36-37.
[47]  Doc. 17 at ¶ 46.
[48]  Doc. 17 at ¶ 47.

mechanisms did not work and Defendants incurred additional costs as a

consequence.[49]

Andrews, who was at that point suffering stress and anxiety, then took

protected leave pursuant to the Family and Medical Leave Act.[50]

### C.   Analysis

#### 1.   The Court will not consider the facts that Andrews introduced for the first time in his Opposition brief.

A plaintiff cannot attempt to cure deficiencies in their complaint by

introducing new facts for the first time in their brief opposing a motion to

dismiss.[51]  Here, Andrews, in his Opposition brief, introduces the following facts

for the first time, despite these facts finding no purchase in Andrews' amended

complaint.

- "Defendants identified employees offered the voluntary severance agreement specifically by their age and also the position they held within the company across all company business segments."[52]

- "Soon after [Andrews] filed his charge [of age discrimination], Defendants sent out a company-wide arbitration agreement, which became binding on all employees effective January 1, 2020, which precluded [Andrews] and all other employees from joining into any class or collective action filed after January 1, 2020."[53]

- "Defendant [Williams] stopped including [Andrews] on relevant management level emails, which he had always received prior."[54]

---

[49]  Doc. 17 at ¶ 48.
[50]  Doc. 17 at ¶ 50.
[51]  *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).
[52]  Doc. 21 at 10.
[53]  Doc. 21 at 15-16.
[54]  Doc. 21 at 16 (emphasis added).

- "[Andrews] also was no longer invited to certain meetings <u>that he had always attended within the normal scope of his work</u>."[55]

- "[Andrews] also was being constantly berated by Defendants because [of] his work performance."[56]

- Defendants did not invite Andrews "to meetings and telephone[] [calls] <u>that were required to do his work</u>."[57]

- Defendants "berat[ed] Andrews' performance <u>on a daily basis</u>."[58]

- Defendants received Andrews' "charge of discrimination" and the "Right to Sue Notice" from the Equal Employment Opportunity Commission."[59]

- Defendants' "critique of [Andrews'] work" was "constant."[60]

- "Armstrong was <u>consistently</u> the individual pushing Andrews and other protected workers to take the severance agreement or they would be faced with termination."[61]

- "Armstrong was aware of [Andrews'] protected activity."[62]

- "[Andrews] was <u>consistently</u> threatened that he was going to lose his employment and that he and other similarly situated employees would be terminated."[63]

- "[Andrews] was also retaliated against and berated for his performance on a near daily basis once he filed his charge of discrimination."[64]

---

[55]   Doc. 21 at 16 (emphasis added).
[56]   Doc. 21 at 16.
[57]   Doc. 21 at 17 (emphasis added).
[58]   Doc. 21 at 17 (emphasis added).
[59]   Doc. 21 at 17.
[60]   Doc. 21 at 17.
[61]   Doc. 21 at 18 (emphasis added).
[62]   Doc. 21 at 18.
[63]   Doc. 21 at 19 (emphasis added).
[64]   Doc. 21 at 19.

The Court will not consider the above facts in deciding the instant motion.

> **2.    Andrews cannot bring claims against corporate entities that were dissolved over three years before he suffered his alleged harm.**

Andrews marshals claims against many Williams corporate entities, including Williams WPC-II, Inc., Williams WPC-III, Inc., and Williams WPC International Co.  But these three corporate entities were each dissolved over three years before Andrews suffered his alleged harm.  As a matter of law, Andrews cannot bring claims against these long-since-dissolved corporate entities.[65]  This compels dismissal with prejudice of Andrews' claims against Williams WPC-II, Inc., Williams WPC-III, Inc., and Williams WPC International Co.[66]

> **3.    Andrews' collective and class action allegations in Counts I and II do not suffice.**

Andrews has styled his amended complaint as "on behalf of himself and all other[s] similarly situated as a class and collective action seeking relief from unlawful discrimination . . ."[67]  However, Andrews provides only a minimal description of these "other[s]."[68]  Andrews has not "set forth factual allegations creating a 'plausible' entitlement to relief for anyone other than himself."[69]

---

[65]    *See* Docs. 20-1, 20-2, and 20-3.

[66]    *See* Fed. R. Civ. P. 17(b)(2); *In re Asbestos Prod. Liab. Litig. (No. VI)*, No. CV 02-MD-875, 2013 WL 12309358, at *1 n.2 (E.D. Pa. July 10, 2013).

[67]    Doc. 17 at 1.

[68]    *See* Doc. 17 at ¶¶ 55-65.

[69]    *Landry v. Peter Pan Bus Lines, Inc.*, No. CIV.A. 09-11012-RWZ, 2009 WL 9417053, at *1 (D. Mass. Nov. 20, 2009); *see also Longnecker v. Am. Exp. Co.*, No. 2:14-CV-0069-HRH, 2014 WL 1577522, at *2 (D. Ariz. Apr. 21, 2014) (listing cases).

Therefore, the Court dismisses the collective and class action allegations that
Andrews includes as part of his Counts I and II.[70]  Andrews will receive leave to
amend.

### 4.     Andrews has stated a *prima facie* age discrimination claim.

To state a *prima facie* claim for age discrimination, a plaintiff must allege
(1) membership in a protected class; (2) qualification for the position they held; (3)
suffering an adverse employment action; and (4) "the adverse employment action
occurred under circumstances that could give rise to an inference of intentional
discrimination."  To plausibly allege the fourth element, the complaint may either
(a) "allege that similarly situated employees who were not members of the same
protected class were treated more favorably under similar circumstances," or (b)
"allege facts that otherwise show a causal nexus between [the employee's]
membership in a protected class and the adverse employment action."[71]  The
parties dispute the third and fourth elements of this claim.

A severance package can be an adverse employment decision and provide a
basis for an independent claim for discrimination because a severance package is a
term, condition, or privilege of employment."[72]  Further, a "plaintiff may establish

---

[70]  Given this holding, the Court denies Defendants' motion for a more definite statement and
motion to strike.

[71]  *Holyk v. Scranton Counseling Ctr.*, No. CV 3:17-0435, 2018 WL 585611, at *5 (M.D. Pa.
Jan. 29, 2018) (cleaned up).  The Court analyzes ADEA and PHRA claims under the same
standard.  *See Bertani v. Westmorland Cty., Pennsylvania*, 212 F. Supp. 3d 564, 572 (W.D.
Pa. 2014).  Therefore, the analysis in this section applies to both Count I and Count II.

[72]  *McGuckin v. Brandywine Realty Tr.*, 185 F. Supp. 3d 600, 611 (E.D. Pa. 2016).

a prima facie case of age discrimination under [the] ADEA if he was offered a

lower severance package than other younger employees because of his age."[73]

Andrews has alleged that only employees over 55 received the severance package,

that he was threatened with termination if he didn't sign the severance package,

and that younger employees didn't feel the same pressure to leave their jobs and

weren't threatened with leaving their jobs.  "At this early stage of the litigation,

these allegations set forth a *prima facie* case of age discrimination under the

ADEA arising out of the allegedly discriminatory severance package."[74]

Therefore, Defendants' motion to dismiss is DENIED with respect to Count I and

Count II.

### 5. Andrews has not stated a *prima facie* case of retaliation.

Andrews has not stated the requisite degree of causation between the alleged

adverse actions here[75] and either Andrews' not taking the severance package or

Andrews filing a charge with the EEOC.  As Defendants note in their Brief in

Support, Andrews has only presented "conjecture and supposition, supported only

by an allegation that one event followed the other," in asserting the requisite

degree of causation.  This does not suffice.[76]  The Court then dismisses Andrews'

Count III but will permit Andrews leave to amend this claim.

---

[73] *Id.*

[74] *Id.*

[75] The Court declines at this juncture to hold whether these actions, as alleged, were in fact adverse.

[76] *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

**6.      Andrews has not stated a claim for aiding and abetting under the PHRA.**

Andrews has not alleged any facts that identify how any of the Williams corporate defendants here aided or abetted others' discriminatory practices.[77] Further, in support of an aiding and abetting claim against Alan Armstrong, Andrews offers up only Armstrong's actions at the August 20, 2019 conference.  In neither instance does Andrews succeed in making out a PHRA claim of aiding and abetting.[78]  The Court then dismisses Andrews' Count IV but will permit Andrews leave to amend this claim.

**7.      Andrews has not stated a hostile work environment claim.**

To prevail on a hostile work environment claim, a plaintiff must show that his workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."[79]

Andrews has alleged pressure to take a severance package and threats that he would be laid off with less severance were he to not take the severance package. He has alleged a poor performance review, his exclusion from emails and

---

[77] *See* 43 Pa. Stat. Ann. § 955(e).

[78] *See Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436, 441 (E.D. Pa. 2001); *Hollinghead v. City of York*, No. 1:12-CV-260, 2013 WL 3523246, at *6 (M.D. Pa. July 11, 2013), *aff'd sub nom. Hollinghead v. City of New York*, 592 F. App'x 110 (3d Cir. 2015).

[79] *Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249 (3d Cir. 2012).

meetings, and Defendants giving bad faith responses to his recommendations on repairs.  He also has alleged stress and anxiety.

As a general matter, the Court cannot assert that these are positive or harmonious workplace development.  But in the Court's view, Andrews has not alleged enough to satisfy the high standard of establishing a hostile work environment.[80]  For example, as described above, Andrews has not made out that the performance review, exclusion from emails and meetings, and bad faith responses were because of Andrews' age.  Further, Andrews has made no indication that the alleged conduct was "physically threatening or humiliating" or that it "unreasonably interfere[d] with [his] work performance."  And the Court cannot divine the precise frequency or severity of this conduct from the current minimal state of the pleadings.[81]  The Court then dismisses Andrews' Count V but will permit Andrews leave to amend this claim.

### 8.  Andrews cannot maintain an ADEA claim against Armstrong as a matter of law.

Andrews' Count V, which sounds under the ADEA, targets Armstrong as a defendant.[82]  But the ADEA does not provide for individual liability.  It only allows a plaintiff to hold their employer liable.[83]  Here, Andrews does not assert

---

[80]  *See Mandalapu v. Temple Univ. Hosp., No. CV 15-5977*, 2016 WL 5404466, at *7 (E.D. Pa. Sept. 27, 2016).

[81]  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157 (3d Cir. 2013).

[82]  Doc. 17 at ¶¶ 73-76.

[83]  *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 n.29 (3d Cir. 2006); *Muhammad v. Sills Cummis & Gross P.C.*, 621 F. App'x 96, 98 (3d Cir. 2015).

that Armstrong was his employer.[84]  Thus, the Court dismisses Andrews'

discrimination and hostile work environment ADEA claim (Count V) with

prejudice as far as this claim is asserted against Armstrong in his individual

capacity.

> **9.    Andrews cannot receive compensatory damages such as the emotional distress damages he requests under the ADEA.**

Compensatory damages such as emotional distress damages are not available

under the ADEA.[85]  Therefore, the Court dismisses with prejudice Andrews'

request for emotional distress damages under the ADEA.[86]

> **10.   As a matter of law, punitive damages are not available under the ADEA or under the PHRA.**

Punitive damages are not available under the ADEA.[87]  Punitive damages

are also not available under the PHRA.[88]  Thus, the Court dismisses with prejudice

Andrews' request for punitive damages under these two statutes.[89]

## III.   CONCLUSION

Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is granted in part

and denied in part.  Andrews is granted leave to amend his claims – to the extent

---

[84]   Doc 17 at ¶¶ 24, 26.

[85]   *McGehean v. AF & L Ins. Co.*, No. CIV A 09-CV-01792TON, 2009 WL 1911618, at *1 (E.D. Pa. June 30, 2009).

[86]   *See* Doc. 17 at 12-13.

[87]   *Dervas v. Taylor Health & Rehab. Ctr. LLC*, No. CIV.A. 3:11-1927, 2013 WL 3973973, at *6 (M.D. Pa. July 31, 2013); *McGehean v. AF & L Ins. Co.*, No. CIV A 09-CV-01792TON, - 2009 WL 1911618, at *2 (E.D. Pa. June 30, 2009).

[88]   *Hoy v. Angelone*, 720 A.2d 745, 751 (Pa. 1998).

[89]   *See* Doc. 17 at ¶ 52.

that they have not been dismissed with prejudice.  "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."  "Circuit case law, however, holds that leave to amend must be given in this situation as well."[90]  It is well settled in this Circuit that leave to amend should be "freely granted."

"Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[91]  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.[92]  Although there is a "liberal pleading philosophy of the federal rules," a court will dismiss the amended complaint in its entirety with prejudice because another opportunity for amendment would be futile.[93]  "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."[94]  I find that here, though Andrews has received one amendment already, another opportunity to amend his claims – to the extent that the Court did not dismiss them with prejudice in this Memorandum Opinion and accompanying

---

[90]  *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997) ("*Burlington*").

[91]  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993).

[92]  *Burlington*, at 1434.  In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id.*; 3 MOORE'S FEDERAL PRACTICE, *supra* § 15.15[3], at 15–47 to –48 (3d ed. 2000).

[93]  *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

[94]  *Id.*

Order – would not be futile.  Further amendment of Andrews' complaint would potentially be able to cure some of the amended complaint's deficiencies.

As such, Andrews will be given twenty-one days from today's date to file an amended complaint with respect to his claims that were not dismissed with prejudice.  If Andrews does not file an amended complaint, the action will be summarily dismissed pursuant to Federal Rule of Civil Procedure 41(b).

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge