IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH ANDREWS, | No. 4:19-CV-02200 |
| Plaintiff, | (Judge Brann) |
| v. | |
| WILLIAMS WPC-I, LLC and ALAN ARMSTRONG (individually), | |
| Defendants. | |

**MEMORANDUM OPINION**

**OCTOBER 13, 2020**

## I.   BACKGROUND

On August 6, 2020, Plaintiff Keith Andrews ("Andrews") filed a five-count second amended complaint ("SAC") against Defendants Williams WPC-I, LLC ("Williams") and Alan Armstrong ("Armstrong"), the CEO of Williams[1] (together, the "Defendants").  The SAC brings claims under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA").  Andrews seeks to bring claims on behalf of himself and on behalf of a class or collective group of plaintiffs.

The Court ruled on Andrews' first amended complaint ("FAC") on July 16, 2020.  In that ruling, the Court dismissed all of Andrews' claims except for those

---

[1]   Doc. 26 at ¶ 5.

under Counts 1 and 2 for Andrews' individual claims.  Plaintiff was given leave to amend *only* the "Counts that were not dismissed with prejudice or that otherwise remain[ed]."[2]  Plaintiff ignored this Court's determination and attempted to replead certain claims and requests that had previously been dismissed with prejudice.  The Court will address those specific issues in greater detail, to once again attempt to make clear to Plaintiff that he should not have included them in the SAC.

The Court grants Defendants' motion to dismiss in part and denies it in part.  Because Plaintiff has had several opportunities to plead his case, leave to further amend the complaint is denied.  The case shall proceed solely on Counts 1 and 2.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[3] and "streamlines litigation by dispensing with needless discovery and factfinding."[4] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a

---

[2]  Doc. 25 at 2 (emphasis in original).
[3]  *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).
[4]  *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

dispositive issue of law."[5] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[6]

Following the Roberts Court's "civil procedure revival,"[7] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[8] and *Ashcroft v. Iqbal*[9] tightened the standard that district courts must apply to 12(b)(6) motions.[10] These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[11]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[12] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[14] Moreover, "[a]sking for plausible grounds . . . calls for enough facts

---

[5] *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).
[6] *Id.* at 327.
[7] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316; 319-20 (2012).
[8] 550 U.S. 544 (2007).
[9] 556 U.S. 662, 678 (2009).
[10] *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).
[11] *Id.* ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").
[12] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[13] *Id.*
[14] *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[15]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[17]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[18] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[19] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[20]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a

---

[15] *Twombly*, 550 U.S. at 556.
[16] *Iqbal*, 556 U.S. at 679.
[17] *Id.* at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).
[18] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).
[19] *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").
[20] *Id.* at 678.

claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[21]

A plaintiff in an employment discrimination case does not need to establish a prima facie case in his or her complaint. The United States Court of Appeals for the Third Circuit clarified this point recently, stating: "a complaint need not establish a prima facie case in order to survive a motion to dismiss."[22]

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[23] Typically, to consider materials outside the complaint, a motion to dismiss must be converted to a motion for summary judgment.[24] However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[25] It is permissible to consider full text of documents partially quoted in complaint.[26] It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.[27] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[28] "For example, even if a

---

[21] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).
[22] *Id.* at 788.
[23] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
[24] *See id.* and Fed. R. Civ. P. 12(d).
[25] *Faulkner,* 463 F.3d at 134.
[26] *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir. 1996).
[27] *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991).
[28] *Faulkner*, 463 F.3d at 134.

document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[29] It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[30] In this matter, I find that these conditions have been met, and will consequently consider the attachments.

### B. Facts Alleged in the Second Amended Complaint

The facts alleged in the SAC, which I must accept as true for the purposes of this motion, are as follows. Because the facts pled have not changed substantially, the Court's recitation of the allegations is largely the same as it was in its prior Memorandum Opinion.

In or around October 2012, Keith Andrews became employed by Access Midstream.[31] Access Midstream was then acquired by Williams in or around 2016.[32] Andrews was employed by Williams as a Senior Operations Technician.[33] When Williams acquired Access Midstream, current employees, including Andrews, retained their seniority level dating back to their original hire date with Access Midstream.[34] Andrews, therefore, had seven years of seniority with Williams.[35]

---

[29] *Id. See also, e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001).
[30] *Faulkner*, 463 F.3d at 134.
[31] Doc. 26 at ¶ 16.
[32] Doc. 26 at ¶ 17.
[33] Doc. 26 at ¶ 18.
[34] Doc. 26 at ¶ 19.
[35] Doc. 26 at ¶ 20.

In or around July 2019, Williams issued a voluntary separation agreement to all of its employees who would be fifty-five years of age or older on December 31, 2019.[36] Defendants provided a spreadsheet of employees who were offered the voluntary severance package, in which the employees were identified solely by their positions and ages.[37] Andrews, currently sixty-two years old, falls within the class of employees to whom Williams offered the voluntary separation agreement.[38]

The voluntary severance package component of the separation agreement offered the following:[39]

- <u>Employees with over three years of service:</u> a cash separation agreement of 2.5 weeks at base pay for each year of service, capped at 65 weeks. Payments were contingent on the employee signing and not revoking (that is, not cancelling) an individualized release agreement.

- <u>Employees with one to three years of service:</u> a cash separation agreement of 7.5 weeks at base pay.

- <u>Employees with less than one year of service:</u> a cash separation payment of 2.5 weeks at base pay.

The voluntary severance package went on to state that severances would be granted on a first come, first served basis, and that there was no guarantee that all employees who elected to take the severance package would be compensated.[40]

---

[36] Doc. 26 at ¶ 21.
[37] Doc. 26 at ¶ 22. *See also* Doc. 26, Ex. A.
[38] Doc. 26 at ¶ 25.
[39] Doc. 26 at ¶ 26.
[40] Doc. 26 at ¶ 27.

The compensation in the voluntary severance package exceeded the severance that Williams would offer employees who did not elect to take the severance package and then were ultimately terminated due to an involuntary reduction in force.[41]

Similarly situated younger Williams employees did not feel pressure to leave their jobs pursuant to the voluntary severance agreement and were not similarly threatened with losing their jobs.[42]  All workers over fifty-five years of age were pressured by Williams to take the voluntary severance package or were consistently threatened with additional layoffs that would result in less severance (if any) being offered.[43]  Andrews did not elect to take the voluntary severance package.[44]

### 1. The July 16, 2019 Frequently Asked Questions Document

One question in a July 16, 2019 Frequently Asked Questions document, proffered by Williams, states: "What if I don't sign my separation agreement?"[45] The corresponding answer states: "Your election to participate in the [voluntary severance package] is not revocable and cannot be changed.  Your decision to sign the release agreement is a separate decision.  You will receive your agreement on or near the release date, and will have at least 45 days to consider and sign the agreement.  If you do not sign the release agreement or you revoke the execution

---

[41] Doc. 26 at ¶ 28.
[42] Doc. 26 at ¶ 29.
[43] Doc. 26 at ¶ 30.
[44] Doc. 26 at ¶ 41.
[45] Doc. 26 at ¶ 31.

of your agreement, your employment will still end and you [will] not receive the separation payment under the [voluntary severance package]."[46]

### 2. The August 20, 2019 Conference

On or around August 20, 2019, Alan Armstrong, the Chief Executive Officer of Williams, held a conference where he stated that approximately 350 employees similarly situated to Andrews elected to take the voluntary severance package.[47] Armstrong went on to state that Williams would be making additional reductions in the workforce despite the fact that approximately 800 employees had elected not to take the voluntary severance package.[48] The Court infers that Andrews was present at this conference.[49]

### 3. Andrews' September 17, 2019 Discrimination Charge – and Following Events

On or around September 17, 2019, Andrews filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") and the Pennsylvania Commission on Human Relations (the "PCHR"), alleging age discrimination, retaliation, and hostile work environment.[50] The charge was filed on behalf of Andrews and similarly situated employees. After filing his charge, Andrews received a poor performance review. He also stopped receiving emails

---

[46] Doc. 26 at ¶ 32.
[47] Doc. 26 at ¶ 33.
[48] Doc. 26 at ¶ 34.
[49] The SAC provides no insight as to who was in attendance. *See* Doc. 17 at ¶¶ 33-34.
[50] Doc. 26 at ¶ 42.

regarding his management duties and was not invited to management meetings.[51] Andrews had previously consistently received these emails and attended these meetings.[52]

Sometime after Plaintiff filed his EEOC claim, Defendants emailed an arbitration agreement to all employees precluding them from bringing employment-related causes of action effective January 1, 2020.[53]  Defendants also asked Andrews about equipment repair.  When Andrews made recommendations on repairs, Defendants deliberately chose alternate repair mechanisms and then blamed Andrews when those mechanisms did not work, and Defendants incurred additional costs as a consequence.[54]

Andrews, who was at that point suffering stress and anxiety, subsequently took protected leave pursuant to the Family and Medical Leave Act.[55]

### C. Analysis

#### 1. The Claims Previously Dismissed With Prejudice

In both its Memorandum Opinion dated July 16, 2020, and its Order dated July 24, 2020, this Court clearly stated that Andrews could not maintain a claim under the ADEA against Armstrong in his individual capacity *as a matter of law*,

---

[51] Doc. 26 at ¶ 44.
[52] Doc. 26 at ¶ 45.
[53] Doc. 26 at ¶ 46.
[54] Doc. 26 at ¶ 48.
[55] Doc. 17 at ¶ 50.


and dismissed that claim <u>with prejudice</u>.[56] Similarly, this Court found that – again, as a matter of law – punitive damages are not available under the ADEA or the PHRA.[57] Plaintiff chose to disregard this Court's rulings and instead replead that claim and that request for relief. This time, the Court dismisses them out of hand.

Once a claim has been dismissed with prejudice, it cannot be plead again.[58] This is true in federal courts throughout this country.[59] Plaintiff and his counsel are put on notice to not ignore this Court's rulings in the future. To reiterate the Court's holding on the matter: Andrews' claim under Count 5 against Armstrong in his individual capacity is once again dismissed with prejudice, as is Andrews' request for punitive damages under both the ADEA and the PHRA.

### 2. Andrews' Class and Collective Claims – Counts 1 and 2

Andrews alleges claims on behalf of himself and a class of individuals in Counts 1 and 2 (under the ADEA and the PHRA, respectively). This Court previously found that Andrews stated an individual claim under both statutes, but

---

[56] *See* Doc. 23 at 16; *see also* Doc. 25 at 2.
[57] *See* Doc. 23 at 17; *see also* Doc. 25 at 2.
[58] Black's Law Dictionary defines the phrase "dismissed with prejudice" as an action being "removed from the court's docket in such a way that the plaintiff is foreclosed from filing a suit again on the same claim or claims." 11th Edition (2019). When a specific claim is dismissed with prejudice, it follows logically that a plaintiff is foreclosed from bringing this claim again.
[59] *See, e.g., Aghaeepour v. Northern Leasing Systems, Inc.*, 378 F.Supp.3d 254, 271 (S.D. N.Y. 2019) (noting that a plaintiff cannot "replead claims that were dismissed with prejudice); *Reddick v. Pomerantz*, 2015 WL 4199271 at *5 n.2 (D. N.J. July 10, 2015); *Sibley v. Watches*, 2020 WL 3259294 at *1 (W.D. N.Y. June 16, 2020) (same); *St. Clair v. Matsuoka*, 2017 WL 8793428 at *4 (D. Haw. Dec. 14, 2017) (same); *Panda Energy Intern., Inc. v. Calpine Corp.*, 2008 WL 3523896 at *2 (N.D. Tx. Aug. 13, 2008) (same).

that he provided only a minimal description of the other individuals similarly situated to him.[60] Accordingly, I ruled that Andrews had not set forth factual allegations creating a plausible entitlement to relief for anyone other than himself.[61] I now consider whether the SAC cures the defects of his previously-amended complaint as to those claims.

Upon review, Andrews has not added any significant allegations to the SAC, but he has attached the Voluntary Separation Program Disclosure Notice circulated to employees at Williams.[62] This new submission provides a more concrete identification of the "others" similarly situated to Andrews and creates a plausible entitlement to relief for those other individuals. Defendants argue that the exhibit establishes "that there are multiple possible groups of plaintiffs and that [Andrews] cannot represent a class which is comprised of the individuals on the spreadsheet as Plaintiff is not representative of such a class." Defendants' spirited argument is well-taken, but it is premature. Defendants' contentions go to whether: (1) there are common questions of law and fact; (2) Andrews' individual claims would be typical of a putative class's claims; and (3) Andrews would be an adequate class representative. These arguments are to be considered upon a motion for class certification. For the moment, there is no certification motion pending, and the Court need not assess Andrews' claims through the lens of Federal Rule of Civil

---

[60] *See* Doc. 23 at 12.
[61] *Id.*
[62] Doc. 26, Ex. A.

Procedure 23. For the purposes of this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Andrews has provided enough information to plausibly state a claim upon which relief may be granted. The motion to dismiss is denied as to Counts 1 and 2.

### 3. Andrews' PHRA Retaliation Claim – Count 3

Andrews alleges that he was subject to retaliation, in violation of the PHRA. This Court previously found that Andrews did not plead facts sufficient to support the requisite degree of causation. Claims under the PHRA are to be "interpreted as identical to federal anti-discrimination laws except where there is something specially different" between the PHRA and the federal statute.[63] Here, the Court analyzes Andrews' PHRA claim using the structure of the ADEA.

To state a claim of retaliation under the ADEA or the PHRA, a plaintiff must show: "(1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action."[64] "One means of establishing a casual connection between the protected activity and adverse action is to demonstrate temporal proximity between these events."[65] Similarly, a plaintiff can establish

---

[63] *Hussein v. UPMC Mercy Hospital*, 446 Fed.Appx. 108, 111-12 (3d Cir. 2012).
[64] *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005).
[65] *Gairloch v. Pennsylvania State University*, 84 F.Supp.3d 407, 417 (M.D. Pa. 2015).

causation by showing an employer's continued pattern of antagonism after the employee's protected activity.[66]

After reviewing the new allegations in the SAC, it is clear that Andrews has not cured the causation defect, largely because he did not include any new facts that address the issue of temporal proximity.  The Court is in no better position to find that Andrews has sufficiently asserted a plausible theory of causation than it was after his last attempt at pleading this claim.  Andrews does not provide any dates for when the alleged retaliation occurred.  Without this information, the Court cannot assess the temporal proximity of said retaliation, much less find that the timing is "unusually suggestive of retaliatory motive."[67]  Simply asserting that one event happened after another is too vague to state a claim, even at this early stage of the litigation.  Andrews' attempt to plead new facts in briefing and supplement his pleadings – claiming, for example, that he began to suffer adverse employment actions "immediately"[68] after he engaged in protected activity – is improper and unavailing.[69]  Likewise, Plaintiff does not provide sufficient facts regarding the alleged retaliatory behavior of the Defendants to allow the Court to find that the behavior complained of was so antagonistic as to give rise to an

---

[66]  *See Robinson v. Southeastern Pennsylvania Transp. Auth., Red Arrow Div.*, 982 F.2d 892 (3d Cir.1993).
[67]  *Gairloch*, 84 F.Supp.3d at 417 (M.D. Pa. 2015).
[68]  Doc. 29 at 16.
[69]  *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

inference of causation. Without more, Andrews has failed to successfully plead this claim. Therefore, it is dismissed with prejudice.

### 4. Andrews' PHRA Aiding and Abetting Claim – Count 4

Next, Andrews alleges that the Defendants aided and abetted violations of the PHRA. Once again, a comparison of the FAC and the SAC reveals that Andrews has added absolutely no new allegations pertaining to Armstrong. As this Court previously found, the allegations against Armstrong were insufficient, because Andrews could only offer Armstrong's actions at the August 20, 2019 conference. Andrews' argument that Armstrong was "consistently the individual pushing Plaintiff and other protected workers to take the severance agreement" finds no support in his own pleading, because Andrews only mentions *one* incident involving Armstrong.

Similarly, Andrews fails to provide new facts supporting his theory that either Defendant aided or abetted the other's discriminatory practices. Accordingly, the outcome must be the same; Andrews' claims under Count 4 are dismissed as to both Defendants, now with prejudice.

### 5. Andrews' Hostile Work Environment Claim – Count 5

Finally, Andrews raises a claim of hostile work environment under the ADEA. The Court repeats, once again, that it previously dismissed Count 5 as to Armstrong *with prejudice*. Therefore, I consider only whether Plaintiff has cured the defects of the FAC as to Williams.

In ruling on the previous iteration of the complaint, this Court found that Andrews had not alleged enough facts to satisfy the high standard of establishing a hostile work environment.[70]  Plaintiff has added no new facts that address the deficiencies of his last pleading.  My previous description of Andrews' allegations still applies: "Andrews has not made out that the performance review, exclusion from emails and meetings, and bad faith responses were because of Andrews' age.  Further, Andrews has made no indication that the "alleged conduct was physically threatening or humiliating or that it unreasonably interfered with his work performance."[71]  Defendants correctly note that the only new statement that even relates to this claim is a legal conclusion[72] – something this Court need not credit when deciding a motion to dismiss.  Therefore, the claim is also dismissed again, this time with prejudice.

### III.  CONCLUSION

Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is granted in part and denied in part.  The motion to dismiss is denied as to Counts 1 and 2.  The motion is granted as to Counts 3-5.  Leave to amend is denied as to Counts 3-5.  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[73]  Andrews has now had three

---

[70]  *See Mandalapu v. Temple Univ. Hosp.*, 2016 WL 5404466, at *7 (E.D. Pa. Sept. 27, 2016).
[71]  Doc. 23 at 16 (internal alterations omitted).
[72]  Doc. 26 ¶ 52.
[73]  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir. 1993).

opportunities to sufficiently plead his claims; he failed to correct the deficiencies of the previous versions, adding only a handful of new allegations to his most recent pleading.  Therefore, the Court dismisses Counts 3-5 with prejudice.  This case shall move forward <u>only</u> on the claims alleged in Counts 1 and 2.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge